# ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

FRANKLIN A. ROTHMAN
JEREMY SCHNEIDER
ROBERT A. SOLOWAY
DAVID STERN

NOV 27 2007

Tel: (212) 571-5500
Fax: (212) 571-5507

November 26, 2007

Hon. Harold Baer
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/07
```

      Re: USA v. Derevianko
          07 Cr. 815 (HB)

Dear Judge Baer:

    I am the attorney for Vladimir Derevianko. This letter seeks a modification of the bail conditions fixed by Magistrate Kevin N. Fox on August 6, 2007 at the initial presentment in this matter. I enclose for the reference of the court a copy of the minutes of the detention hearing which was conducted before Magistrate Fox.

## PRIOR PROCEEDINGS IN THIS MATTER

    The bail conditions set by Magistrate Fox call for execution of a $250,000 personal recognizance bond to be co-signed by one financially responsible person and supported by $7,500.00 in cash. Mr. Derevianko has been unable to satisfy these conditions and has now been detained for almost four months. While he has assembled many people willing to co-sign a bond for him, and to make financial donations, in most cases these individuals are without substantial resources or income. Two of such individuals, Yevgenia Sevorjova and Svetlana Onuchak, were previously presented to the government as proposed co-signers and rejected, and were the subject of a prior bail modification hearing before your Honor which was denied on September 5, 2007.

    In general, pursuant to the Bail Reform Act, the court must release a defendant on personal recognizance, unsecured bond, or specified conditions, whichever is the least restrictive necessary to assure the defendant's appearance and the safety of others and

*[handwritten annotation: "whose fault"]*

the community." See 18 U.S.C. § 3142(a)(b)(c). The court shall order detention of the defendant only in the event the court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. 3142(e). The final section of the BRA states, "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

The bail package proposed at this time is far more substantial than that which was rejected on September 5. Mr. Derevianko has assembled two financially responsible co-signers (as detailed more fully below), cash in the amount of $51,500.00, and a home with an appraised valued of $470,000, which is encumbered by a $407,000 mortgage. It is noted too that the Court has the option to also impose the additional condition of strict pre-trial supervision with electronic monitoring, to which the defendant would consent. Such bail package will satisfy the Bail Reform Act's direction that in the event the Court finds the defendant's release on personal recognizance or upon execution of an unsecured appearance bond is insufficient, that the Court "order the pretrial release of the person ... subject to the least restrictive further condition, or combination of conditions" that will "reasonably assure" the defendant's return to Court. 18 U.S.C. § 3142((c)(B).

## THE FINANCIALLY RESPONSIBLE
## CO-SIGNERS AND THE COOPERATIVE APARTMENT

The proposed co-signers are Mr. Harold Odia and Laurence Spivak, Esq.

Harold Odia is a security guard for Harvard Protective Services and has been so employed for six years. He is close friend to Mr. Derevianko and knows him approximately five years. He earns $56,000 per year and owns a recently purchased home at 1305 Shakespeare Avenue, Bronx, New York 10452 which he is willing to encumber as security for Mr. Derevianko's bail. As may be seen from the enclosed closing papers, Mr. Odia purchased the Shakespeare Avenue premises for the purchase price of $453,000 on November 6, 2007, and put down $50,305.99 cash at closing. Appraisal of the home by Reliable Appraisers, Inc. values the premises at $470,000. Pertinent sections of the appraisal are enclosed for the reference of the Court. Mr. Odia understands that by co-signing the bond and pledging his home that he risks his entire interest in his assets should Mr. Derevianko violate the conditions of his bail.

Laurence Spivak, Esq. Is also willing to co-sign a bond on behalf of Mr. Derevianko, and has successfully raised $51,500.00 cash which is available to secure the bond. Mr. Spivak is an attorney with an office in Manhattan located at 150 Broadway. He is a graduate of Hofstra Law School and received his undergraduate degree from Columbia University. Mr. Spivak resides with his wife and two young children in a home which they rent in Bayside, Queens.

### OTHER MATTERS RELEVANT TO BAIL
### INCLUDING THE SENTENCING GUIDELINES

The pre-trial services report in this matter recommends the defendant's release upon "moderate bond" and secured by a small amount of cash or property. These conditions can be satisfied by the bail package proposed herein. Until his arrest in this matter, Mr. Derevianko resided in the United States with his elderly mother, Lydia Derevianko, at 318 Hoover Avenue, Bloomfield, New Jersey. Currently, he enjoys a form of "permanent" legal immigration status in this country which is referred to as "asylee" status. He was granted such status pursuant to order of the Board of Immigration Appeals in or about March, 2004. Such order was based on findings that Mr. Derevianko was the subject of past persecution in Ukraine and the finding that there is a "reasonable possibility" that he faces further persecution. See, Derevianko v. Reno, 55 Fed. Appx. 609, 618 (3rd Cir. 2003). (A copy of the asylum case referenced herein is enclosed for the convenience of the Court). Since being granted legal status in the United States, Mr. Derevianko has worked continuously as an interpreter for the law office of Laurence Spivak, Esq., and done other interpreting work as well.

As an asylee facing persecution in Ukraine, Mr. Derevianko fought a protracted legal struggle to remain in the United States. While he still faces potential deportation if convicted in this matter, it is noteworthy that Mr. Derevianko would continue to have rights under the Convention Against Torture, and other provisions, pursuant to which even those convicted of aggravated felonies may avoid deportation. And while it is not clear what the outcome of further immigration proceedings will be, for bail purposes, the relevant question is not whether Mr. Derevianko may one day be deported, but whether he will stay and fight the instant case even if his conviction may result in the possibility of future deportation. As found in the immigration matter, Mr. Derevianko faces grave danger if he returns to Ukraine. And as he elected to do during the pendency of his immigration case -- during which he was detained but still chose to stay in the United States to fight for asylum -- his history and characteristics establish that he is

Hon. Harold Baer
November 26, 2007
Page Four

a person strongly motivated to stay in the United States. Moreover, after his success in his asylum case, Mr. Derevianko was able to bring his mother from Ukraine to reside with him. His father passed away some years ago, and Mr. Derevianko now has no family except his mother who resides with him here in the United States.

Further, Mr. Derevianko, has no prior criminal history and is 44 years old. He is charged with a conspiracy to traffic in fraudulent immigration documents in violation of 18 U.S.C. § 1546.[1] If convicted, the relevant Sentencing Guideline provisions appear at USSG § 2L2.1, which provides for a base offense level of 11. Such offense is elevated three levels if the offense involved between six and twenty-four documents; six levels if the offense involved 25 to 99 documents; and nine levels if the offense involved 100 or more documents. See, USSG § 2L2.1(b)(2). In Criminal History Category I, if Mr. Derevianko is convicted and the offense is shown to involve between six and twenty-four documents, Mr. Derevianko's offense level would be 14 and his sentencing guideline range 15 - 21 months. He faces no statutory minimum sentence. See, 18 U.S.C. § 1546.

Accordingly, without minimizing the seriousness of the charges, it must be noted that Mr. Derevianko is not exposed to a substantial

---

[1] The government, of course, claims to have a strong case against Mr. Derevianko. According to the disclosures made so far, however, the evidence shows that bribe money was paid by co-defendant Tursunov to individuals in Uzbekistan to obtain phoney visas, and also by the person so far identified in the Complaint by the government only by the designation "U-3". (See, Complaint at 33 - 38). And while Tursunov and U-3 are alleged to have paid such funds to unidentified corrupt officials employed in overseas embassies, the government has yet to proffer or disclose a shred of proof that Mr. Derevianko was ever paid money by anyone for taking part in any bribery scheme, or that he has any connection to any individuals who paid or received money to obtain and deliver phoney travel documents.

[2] Such calculation assumes without conceding a conviction after trial, and does not account for the possibility of pre-trial disposition and appropriate reductions for acceptance of responsibility, nor for possible adjustments and variances which the Court may consider for factors relevant pursuant to 18 U.S.C. § 3553(a).

Hon. Harold Baer
November 26, 2007
Page Five

term of incarceration if convicted in this matter. He is also <u>not</u> a presumptive flight risk pursuant to the relevant provisions of the BRA, and he is 44 years old with a work history and no criminal record. Moreover, as noted, the defendant fought a protracted legal battle to obtain asylee status in the United States based upon showings that he is subject to persecution, including the risk of death, if he returns to his native country. See, <u>Derevianko v. Reno</u>, 55 Fed. Appx. 609, 618 (3rd Cir. 2003). Such facts argue strongly that the risk of flight, if any, is not great, and is overcome by the bail package presented herein.

A prior application by counsel for a bail modification before this Court was rejected as insufficient on September 5. However, maters have now dramatically changed in that (i) the owner of a home in the Bronx valued at approximately $470,000 (with equity of $63,000 as per the enclosed appraisal) has offered to co-sign and pledge his home as security; (ii) more than $50,000 in cash has been raised; (iii) solvent co-signers are available to co-sign Mr. Derevianko's bond; and (iv) the Court may require the defendant to be under strict pre-trial supervision including electronic monitoring.

<u>CONCLUSION</u>

For all of the reasons set forth herein, this Court should modify the conditions for the defendant's release in accordance with the terms proposed herein.

Thank you for your attention and consideration.

Sincerely,

Robert A. Soloway

cc: AUSA Michael D. Farbiarz

[Handwritten annotation by Judge: Denied — the US / the Δ is not a citizen of [...] he has made no friends that case [...] to put up — or have enuf to put up significant bail — worse [...] is in Russia or the Baltics [...] of the $ money he has been [...] incarcerated that the [...] calendar — to the case were defense [...] you, the govt — if the [...] I'd continue to be read [...] he's ready to do so — I'm short your client ready to take [...] that impacts a risk that I'm not show up for trial [...] bail risk — a risk that we won't show up [...] to the effect that [...]]

SO ORDERED:

Harold Baer, Jr., U.S.D.J.
12/11/07

Endorsement:

    DENIED. The defendant is not a citizen of the U.S. he has made no friends that care enough to put up - or have enough to put up significant bail - worse yet all his "friends" and family is in Russia or the Baltic countries as for the four months he has been incarcerated that's certainly the fault of you and the government if there is any fault - I was ready to try the case immediately and for that matter I continue to be ready and able to do so. In short your client represents a bail risk and a risk that I am not ready to take and to the effect that he won't "show up" for trial.